IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, **Plaintiff,** v. JEFFREY OMAR DELGADO-LÓPEZ, **Defendant.** | **Criminal No.** 25-283 (FAB) |

**OPINION AND ORDER**

BESOSA, Senior District Judge.

Before the Court is defendant Jeffrey Omar Delgado-López ("Delgado")'s motion to suppress evidence found in a vehicle pursuant to a search warrant. (Docket No. 20.) The United States opposed the motion. (Docket No. 26.) For the following reasons, the Court **DENIES** defendant Delgado's motion to suppress and **DENIES** his request for a Franks hearing. (Docket No. 20.)

I.  **Relevant Background**

On June 1, 2025, Delgado traveled to Isla Verde, Carolina from Caguas, Puerto Rico in his brother's vehicle, a Ford F-150 truck ("F-150"). .Id. at p. 2. Between 4:00 and 5:00 a.m., a Carolina Municipal Police Agent (the "agent") was patrolling the area when he noticed a black F-150 parked illegally "in an area couples frequent to have sex." Id. at p. 3; Docket No. 26 at p. 3. While the agent was issuing a ticket, he verified if anyone was inside the vehicle and observed a firearm in plain view. (Docket

Criminal No. 25-283 (FAB)                                                  2

No. 26 at p. 3.) When Delgado and three other individuals returned to the F-150, the agent asked for identification. (Docket No. 20 at p. 3.) According to Delgado, they were patted down and questioned for more than an hour. (Docket No. 20 at p. 3.)

Delgado informed the agent that he was not the owner of the F-150 and that he did not have the keys to it. Id. at p. 4. Delgado stated that the F-150 belonged to his brother but that he was the driver. (Docket No. 26 at p. 7.) The agent asked Delgado if he had firearms license, and he answered that he did not. Id. The agent gave the four individuals citations to go to the precinct on June 3rd. Id.; Docket No. 20 at p. 4. Delgado states the agent then informed him that he was going to take the F-150 for further investigation. (Docket No. 20 at p. 4.)

Some time later (it is unclear exactly when), the agent spoke with the state prosecutor and proceeded to request a search warrant. (Docket No. 26 at p. 8.) The search warrant was issued, and the F-150 was searched. (Docket No. 20 at p. 5.) Inside the F-150, the municipal agents found:

- two 9mm magazines, one with 15 rounds of ammunition and one with 27 rounds,
- a Glock pistol model 19 modified to fire automatically,
- three cellphones,
- two traffic tickets in Delgado's name, and

Criminal No. 25-283 (FAB)                                                3

- either a medical prescription or a vial of prescription medicine (also unclear) in Delgado's name. (Docket No. 26 at p. 8; Docket No. 20 at pp. 5-6.)

On June 25, 2025, Delgado was indicted on two counts: (1) felon in possession of firearms and ammunition in violation of 18 U.S.C. § 922(g)(1); and (2) possession of a machinegun in violation of 18 U.S.C. § 922(o). (Docket No. 1.) On February 12, 2026, Delgado requested that the Court suppress the evidence seized from the F-150 or alternatively, hold a <u>Franks</u> hearing. (Docket No. 20.) The government responded. (Docket No. 26.)

**II. Discussion**

Delgado argues (1) that the stop and pat-down search was improper because there was no reasonable suspicion to stop him, (2) that the F-150 was seized and searched in violation of the Fourth Amendment of the U.S. Constitution, and (3) that the search warrant affidavit omitted material facts, which, if provided to the magistrate judge, would result in finding no probable cause to the search the F-150. (Docket No. 20.) Because Delgado argues there were material omissions in the search warrant's affidavit, he also requests a <u>Franks</u> hearing to determine the warrant's validity. The government counters that Delgado (1) fails to show that the pat-down search was improper because he was not subject

to a Terry¹ stop, (2) has not established standing to challenge the search of the F-150 because he has no reasonable expectation of privacy in the vehicle; and (3) has not established a sufficient showing that there was a material omission in the search warrant because Delgado has only provided self-serving statements. (Docket No. 26.)

**A.   Terry Stop**

Delgado first argues that he was unlawfully stopped and patted down in violation of the Fourth Amendment. (Docket No. 20 at pp. 8-9.) The government argues that the officers did not perform a Terry stop. Terry stops are "brief investigatory stops of persons or vehicles that fall short of a traditional arrest." United States v. Tiru-Plaza, 766 F.3d 111, 115 (1st Cir. 2014). A Terry stop occurs "whenever a police officer accosts an individual and restrains his freedom to walk away." Terry, 392 U.S. at 16.

The Court declines to address if there was a Terry stop because neither party seeks to admit or exclude any evidence obtained as a result of the alleged stop. See United States v. Biaou, 2026 WL 221768, at *8 n.9 (D.D.C. Jan. 28, 2026) (citing United States v. Kahre, 737 F.3d 554, 565 (9th Cir. 2013) ("Because the government does not intend to introduce evidence obtained from

---

¹ Terry v. Ohio, 392 U.S. 1 (1968).

[defendant's] cell phone or the suspected contraband, the Court declines to address those claims here."). Whether a <u>Terry</u> stop occurred and whether any of Delgado's constitutional rights were violated are moot points for the purposes of his motion to suppress.

    **B.    Standing to Challenge Vehicle Search and Seizure**

Before addressing the merits of Delgado's arguments about the search and seizure of the F-150, the Court must address whether Delgado has standing to challenge the search and seizure. The Court finds that he does not.

The Fourth Amendment protects "[t]he right of people to be secure in their houses, papers and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Fourth Amendment protection may only be claimed when a defendant has shown that he or she has an expectation of privacy. <u>United States v. Symovenich</u>, 688 F.3d 12, 19 (1st Cir. 2012).

"In the context of a vehicle search, a defendant must show a property or a possessory interest in the automobile in order to establish a reasonable expectation of privacy." <u>United States v. Almeida</u>, 748 F.3d 41, 47 (1st Cir. 2014) (internal quotations and citations omitted). "[A] person who borrows a vehicle with the owner's permission may have a reasonable expectation of privacy." <u>Id.</u> To determine if a defendant has a reasonable

expectation of privacy in a vehicle, the Court looks at a variety of factors, such as:

> ownership, possession, and/or control; historical use of the property searched or the thing seized; ability to regulate access; the totality of the surrounding circumstances; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of such an expectancy under the facts of a given case. We look, in short, to whether or not the individual thought of the place (or the article) as a private one, and treated it as such.

Id. (citing United States v. Aguirre, 839 F.2d 854, 856-57 (1st Cir. 1988)).

In Almeida, defendant challenged the lower court's decision to admit evidence obtained from a vehicle search. Id. at 46-47. The First Circuit Court of Appeals determined that defendant failed to establish that he had a reasonable expectation of privacy on the vehicle because "he only had a casual possession of the vehicle." Id. at 47. The Court in Almeida noted that defendant did not own the vehicle and had no pattern of repeated use or control of the vehicle "that would allow us to conclude that his possession . . . was anything more than informal and temporary." Id. at 48.

Similarly, here Delgado has not established he has a reasonable expectation of privacy in the F-150. He does not own the vehicle; he has not provided a sworn statement from his brother, the owner of the vehicle, that Delgado had permission to

use the vehicle, and has not shown a pattern of repeated use of the vehicle.  Accordingly, he has not shown that his possession was anything more than informal and temporary and consequently, he lacks standing to challenge the admission of the evidence seized from the F-150 pursuant to the Fourth Amendment.

    **C.**    **Franks Hearing**

Because Delgado does not have standing to suppress the evidence seized from the F-150, the inquiry could stop here.  See United States v. Torres, 188 F.Supp.2d 155, 158 (D.P.R. 2002) (Gregory-García, J.) (finding that a defendant lacked standing to request a Franks hearing because he failed to prove a reasonable expectation of privacy in the place that was searched).  In any event, Delgado has not made the required offer of proof necessary to trigger a Franks hearing.  An affidavit "supporting a search warrant is presumptively valid."  United States v. Gifford, 727 F.3d 92, 98 (1st Cir. 2013).  A defendant is able "to rebut this presumption and challenge the veracity" of the warrant application at a pretrial hearing, typically referred to as a "Franks" hearing.  United States v. McLellan, 792 F.3d 200, 208 (1st Cir. 2015); Franks v. Delaware, 438 U.S. 154 (1978).  A defendant does not have an automatic right to a Franks hearing and is only entitled to an evidentiary Franks hearing when he or she makes a "substantial preliminary showing that a false statement, knowingly

Criminal No. 25-283 (FAB)                                                8

and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." Franks, 438 U.S. at 155-56.  Material omissions can also serve as grounds for a Franks hearing, but only when the omissions are "designed to mislead, or [...] made in reckless disregard of whether [it] would mislead, the magistrate in his appraisal of the affidavit."  United States v. Barbosa, 896 F.3d 60, 68 (1st Cir. 2018).

To make a "substantial preliminary showing", a defendant's claim must go beyond vague or conclusory statements and must "be supported by more than a mere desire to cross-examine."  United States v. Andújar-Ortiz, 575 F. Supp. 2d 373, 377 (D.P.R. Sept. 2, 2008) (García-Gregory, J.).  There must be "an offer of proof", such as "affidavits or sworn or otherwise reliable statements of witnesses."  Id.; Franks, 438 U.S. at 171 ("Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.").  Self-serving statements alone are insufficient to serve as an offer of proof.  Id. (citations omitted).

Here, Delgado has not made a substantial preliminary showing to trigger a Franks hearing.  Delgado only submits his own affidavit, which merely attests that he has read "the Motion to

Criminal No. 25-283 (FAB)                                                    9

Suppress Evidence and for Frank's Hearing, including the factual statement in the motion."  (Docket No. 20-1.)  A statement that Delgado read the motion is not even an allegation that the agent's affidavit contains a material omission.  And, even if the Court considers the facts in the referenced motion, Delgado did not make a substantial preliminary showing of a material omission.  He does not include statements from the other witnesses, nor does he include a copy of the affidavit submitted by law enforcement, without which it is difficult if not impossible to assess whether a material omission was made.  The failure to include any offer of proof is fatal to Delgado's request for a Franks hearing.  See United States v. Figueroa-Figueroa, 2025 WL 3079162, at *4 (Nov. 4, 2025) (López-Soler, M.J.), *adopted*, 2026 WL 94603 (Jan. 9, 2026) (Delgado-Colón, J.) (denying request for Franks hearing because defendant did not provide an offer of proof or the challenged affidavit, only conclusory allegations).  Accordingly, the Courts **DENIES** his request.

**III. Conclusion**

For the reasons discussed above, the Court **DENIES** defendant Delgado's motion to suppress and **DENIES** his request for a Franks hearing.  (Docket No. 20.)

Criminal No. 25-283 (FAB)                                                    10

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March 12, 2026.

                                            s/ Francisco A. Besosa
                                            FRANCISCO A. BESOSA
                                            SENIOR UNITED STATES DISTRICT JUDGE